William J. Courtney, Esq. – New Jersey Attorney ID #016161986
**LAW OFFICES OF WILLIAM J. COURTNEY, L.L.C.**
6 Oldwick Road
Whitehouse Station, New Jersey 08889
(908) 782-5900 (tel)
(908) 782-7001 (fax)
*Attorneys for Plaintiff Robert Wright*

| | |
|---|---|
| RENAISSANCE HEALTH, LLC AND ROBERT WRIGHT,<br><br>*Plaintiff,*<br><br>v.<br><br>HITEKS SOLUTIONS, INC., GERASIMOS PETRATOS, MD, (Individually and in his Representative Capacity); MARTY COYNE, MD (Individually and in his Representative Capacity); PERIS BRODSKY, CT (Individually and in his Representative Capacity); JOHN DOES 1-10; XYZ CORPORATION 1-10<br><br>*Defendants.* | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK<br><br>CIVIL ACTION NO.: _____<br><br>*A Civil Action*<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs, RENAISSANCE HEALTH, LLC and ROBERT WRIGHT, by way of Complaint do hereby say:

## THE PARTIES

1. Plaintiff, Renaissance Health, LLC ("Renaissance") is a Limited Liability Corporation organized under the laws of the State of New Jersey with its principle place of business located at 674 Route 523 North, Whitehouse Station, New Jersey 08889.

2. Plaintiff Robert Wright is a citizen of the State of New Jersey and resides at 674 Route 523 North in Whitehouse Station, New Jersey 08889. At all relevant times hereto, Robert Wright was the managing member and sole employee of Plaintiff Renaissance.

3. Defendant Hiteks is a New York Corporation with its principle place of business located at 447 Broadway, 2nd Floor, New York, New York 10013.

4. Defendant Gerasimos Petratos, MD, (hereinafter referred to as "Petratos") is a citizen of the State of New York and residing at 111 Worth Street New York, NY 10013. At all times relevant hereto, Petratos was the Chief Executive Officer ("CEO") of Defendant Hiteks as well as Hiteks majority shareholder.

5. Defendant Martin Coyne, MD, (hereinafter referred to as "Coyne") is a citizen of the State of New York and residing at 200 East 94th Street, Apartment 2215, New York, NY 10128. At all times relevant hereto, Coyne was the Chief Medical Officer, minority shareholder and co-founder of Hiteks with Defendants Petratos and Peris Brodsky.

6. Defendant Peris Linn Brodsky, MS, (hereinafter referred to as "Brodsky") is a citizen of the State of Illinois and residing at 1392 Kenilwood Lane, Riverwoods, IL. 60015. At all times relevant hereto, Brodsky was the Chief Technical Officer, majority shareholder and co-founder of Hiteks with Defendants Petratos and Martin Coyne.

## JURISDICTION

7. This Court has jurisdiction over the claims asserted in the Complaint pursuant to 28 U.S.C. § 1332, plaintiff and defendant are citizens of different states and amount in damages exceeds $75,000.00.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

8. On or about February 9, 2016, Plaintiff Renaissance entered into a written contract with Defendant Hiteks (See attached "Exhibit A"). From the onset of the contract term up until its termination date of February 22, 2019 Robert Wright, Renaissance's sole member was the only salesperson for Hiteks and was engaged in the business of sales and marketing of licensed software for the medical industry that would enable physicians to optimize their patient documentation, patient care and patient billing. Hiteks software was licensed for use primarily on EHR platforms developed by Hiteks' business partner Epic System Corporation (hereinafter referred to as "Epic"). Epic's EHR platform is utilized worldwide by physicians, hospitals and medical schools to gather and maintain medical record information in order to improve patient care, innovate healthcare delivery and to assist the healthcare industry in achieving financial health.

9. According to Epic, hospitals who use its software hold medical records for 64% of patients in the United States and 2.5% of patients worldwide.

10. Epic primarily develops, manufactures, licenses supports and sells an electronic medical record software application known as Epic EMR/EHR). Epic also offers an integrated suite of healthcare software centered on a cache database. Epic's applications support functions related to patient care, including but not limited to registration and scheduling, clinical systems for doctors, nurses, emergency personnel, and other care providers; systems for lab technologists, pharmacists and radiologists; and billing systems for insurers.

11. Hiteks provides software that is adapted to Epic EHR for the specific functions of Clinical Documentation Improvement ("CDI") and Computer Assisted Physician Documentation ("CAPD").

12. As a direct result of the agreement between Hiteks and Renaissance, Plaintiff Robert Wright (Renaissance's managing member) took over the sales and marketing functions of Hiteks' products and became Hiteks' sole salesperson. He was involved in all sales presentations (in Person, by Telephone or via WEBX) made to all Clinicians, Physicians, CIO's, and C-Suite Executives as potential clients of Hiteks nationwide. Marketing - Besides day to day nationwide sales efforts, the Plaintiff also created a majority of Hiteks Marketing materials. Plaintiff Named/Branded each of the 3 Main Software products that Hiteks offered, with creative names that were later Trademarked by Hiteks and was not separately reimbursed for these efforts. (AdvocateMD / ConcurDI / VigilantQA). The Plaintiff also drafted all Marketing Correspondence used for Hiteks Monthly Mass Mailing Campaigns, tailoring each marketing offering sales piece to the specific demographic being mailed to i.e. C-Suite, CFO, CIO, Clinician, CDI Specialist, etc. Plaintiff worked very closely on a daily basis with Mr. Dave Thomas, National Director of Sales, who was located remotely outside of Pittsburgh PA. Mr. Thomas has been contracted with Hiteks for the last 5 years and was in place for the whole time Plaintiff was under contract with Hiteks as their sole Sales Representative. 13.

13. There was an economic dependence by Renaissance upon the working relationship with Hiteks and financial integration of Hiteks business with Renaissance. Renaissance was prohibited from engaging in the sales or marketing of any products that would compete

with products offered by Hiteks. Renaissance was also prohibited from competing with Hiteks or soliciting their employees for a period of twelve (12) months after the termination of the parties' agreement.

14. During the course of Renaissance's 3-year initial agreement with Hiteks, Robert Wright became increasingly aware of various deceptive and illegal activities of Hiteks as well as fraudulent statements and unethical conduct Hiteks marketed and directed at potential purchasers of is products, its business partners (including but not limited to Epic and Novartis) and the general healthcare seeking public.

## FRAUDULENT AND MISLEADING CONDUCT

15. At all times relevant hereto, Hiteks marketed CDI and CAPD software to be used on the Epic platform that had not yet been fully developed and tested, per the advanced product features being marketed and sold to Hiteks' clients as "current system features".

16. Hiteks also falsified or flat out made up Key Performance Indicators ("KPI") metrics on what a customer was to expect for clinical and financial results from using Hiteks software. These falsified and made up KPI metrics were incorporated into all Hiteks sales and marketing content, in an attempt to deceive these potential clients of the medical health community to purchase Hiteks software.

17. At all times relevant to the claims made in this Complaint, Hiteks was prohibited by contract with Epic from using and/or distributing their copyrighted data, proprietary materials, images, screen shots, and/or intellectual property of Epic, in hard copy or electronic form. Notwithstanding the prohibitions, Hiteks incorporated Epic's intellectual property and proprietary materials in their sales and marketing materials, used for potential purchasers of Hiteks products without the written permission of Epic.

18. Hiteks, without prior authorization from Epic, made two unauthorized *Demonstration Videos* and branded them "Hiteks Demo Videos" in which proprietary software screenshots and the confidential properties of the Epic software could be viewed. The first unauthorized video was secretly made in 2017 with the assistance of Eric Durfrec, then an employee in the Information Technology ("IT") Department of Hackensack University Medical Center ("HUMC") who is now employed by the University of Connecticut. Mr. Durfrec also helped administrate and operate HUMC's Epic EHR system, he was paid off the record by Hiteks to make the unauthorized video which also contained confidential patient information in violation of HIPAA.

19. Copies of the unauthorized videos were distributed as e-mail attachments and were also made available to anyone requesting it via a URL link distributed orally or in writing by Hiteks. The creating and distributing of these unauthorized videos were a known, wonton and willful violation of Epic's stated trademark, logo, video use stated in Hiteks' agreement with Epic. It was also a violation of Federal and State laws protecting trademarks, copyright and other laws and regulations.

20. In the 4th quarter of 2018, Epic held a User Meeting at its headquarters in Madison, Wisconsin for Epic's customers who utilize applications generated by third parties for use on the Epic platforms. Plaintiff Wright and Defendant Petratos attended the meeting representing Hiteks. While at the meeting, Petratos instructed Wright to inform Epic users that Hiteks had developed software for Best Practice alerts for sepsis. integrated into and to be used with the Epic EHR. Wright was also directed to hand out a *Press Release* given to him by Petratos announcing the development and availability of the software which did not exist and had never been developed. The software that Hiteks

6

was touting to the Epic users, has, to date, has never been installed or tested anywhere. Hiteks' representation of the ability of its software in this regard was a total fabrication which was intended to deceive and take advantage of Epic customers, again for Hiteks monetary gain.

21. In addition to misrepresenting their product directly to Epic customers, Hiteks engaged in similar fraudulent conduct with the National Conference for the Association of Clinical Documentation Specialists ("ACDIS") National Meeting. In May of 2018, ACDIS held its national convention in the State of Texas. During the conference, Hiteks had a Booth on the floor of the convention and conducted a survey of the ACDIS conference attendees purportedly to determine what functions and applications on their EHR platforms were most important to them. Wright oversaw the implementation of the survey and presented the results to Petratos. Because the survey results for the most popular topics did not fit the Hiteks sales narrative that Petratos wanted to present in order to match up with Hiteks' software features, he directed that the survey results be edited and altered so that the results would lead people back to specific Hiteks products and features. Essentially, the modified survey results made it appear that the software offered by Hiteks met the most popular survey primary requirements and needs of the clinical documentation specialist in the medical and other scientific professions when they in fact did not. So, the published clinical survey results were falsified and were modified by Defendant Petratos to make it look like Hiteks software features best addressed their stated survey concerns. The falsification of the clinical survey results and modifications that introduced false data by Petratos was knowing and intentional

done and was likely to deceive and cause harm to the purchasers of Hiteks' products and the general healthcare seeking public.

22. Wright informed Petratos that he strongly objected to the manipulation of the survey results after they were modified and published and used in a subsequent email mailing to ACDIS members before their Fall 2018 meeting. The falsified clinical survey results were also put on the Hiteks website. Petratos continued to appropriate and misuse Epic's confidential and proprietary information. Shortly before his termination in February 2019, the Plaintiff had informed Petratos that he was considering sharing Hiteks' deceptive practices with Epic, Novartis, ACDIS members, along with Hiteks' other customers including one of Hiteks' newer accounts, Vidant. From that point in time forward until the termination of his employment, Petratos exhibited aggressive and intimidating and harassing behaviors toward him and would not return calls or emails in a regular timely fashion.

23. In response to his knowing and intentional behaviors, Wright told Petratos that when a CEO breaches criminal, health and safety rules, it can result in severe harm to patients and the general public and also damage the reputation of everyone involved. Petratos nevertheless continued to misrepresent the survey results and continued his course of aggression and intimidating behavior toward Wright.

24. Prior to Plaintiff's demand, Hiteks also engaged in the deceptive practice of paying key decisions makers in various customer locations to get them to purchase Hitek's software. He would hire the individuals as "consultants". Plaintiff advised Defendant Petratos that he believed Petratos actions constituted bribery and he objected to the continuation of the payments by Hiteks. Petratos and Hiteks ignored Plaintiffs

objection and continued offering "consulting fees" to various decision makers to try and influence sales outcomes including Glen Kraus, Physician Documentation Improvement Manager for University Medical Center of Southern Nevada.

25. Plaintiff also repeatedly objected to Hiteks' false statement to the public and its customers' frivolous claims made on its website, press release and mass publications to medical cliental. Hiteks was subsequently told that client *metric evaluations* were conducted every 6 months in order to determine that Hiteks' Software was meeting *Key Performance Indications ("KPI'S")* Petratos utilized false KPI metrics to promote the sale and continuous use of its Hiteks products. Petratos instructed Wright, and other Hiteks' personnel to represent to customers that they had conducted analysis on KPI's and reports of the same were being generated on a monthly, yearly and quarterly basis for customers. The statements were put into prospect customer contracts but were blatantly false and were being made solely to increase Hiteks' business profits. Hiteks' never set up a single account for monthly KPI analysis. KPI Metric Reports were never done for any customers and plaintiff repeatedly objected to Petratos of these procedures listed, Defendants Petratos would make up, copy such KPI's and reports numerous times during his employment with Hiteks' plaintiff objected to false representation being made by Hiteks' in the process of advertising their product to Hiteks' existing and potential customers as well as the Healthcare Community. Petratos ignored Plaintiff's objection and continued to insist that Plaintiff and other Hiteks' employees continue to represent to customers that Hitek's software had advanced capabilities which it did not have and was not yet developed. Before one new feature could be developed another feature was being misrepresented by Petratos and Plaintiff was instructed "Keep selling

9

and don't worry about it." Accordingly, an endless stream of features were presented to the public that were never developed these false medical and clinical claims were included and notified in press releases and published in mass mailings to doctors and administrators, and all Epic users.

a. False pediatric features indicating that Hiteks software contained (pediatric queries);

b. False undocumented statements that Hiteks software could meet 90% of the clinical volume for the M.E.A.T. and H.C.C. Library, including evidence based clinical pathways for Heart Failure, Sepsis, and PDL 1 cancer screening for better monitoring and management.

c. False claims of Clinical Decision Support *Logic Triggers* married to internal Epic system hooks for use with the Epic System to improve CDI (This feature of the Hiteks product was not developed or tested but were still marketed and sold as an additional feature to work with Epic.

d. False Best Practice Alerts ("BPA") for use inside the Epic System. Hiteks stated this software would increase the Positive Predictive Value for Sepsis Alerts by reducing 90% of all False Positives. (This feature had not yet been developed or tested but was being sold as an available product for use with Epic BPA's.

e. False claims to system average (claims that Hiteks Software was 95% specific and 98% sensitive were falsified and Hiteks had no recorded data to support their claims.

f. Petratos' mismanagement and misappropriation of Hiteks corporate finances, with the deceitful non-payment of commissions due Plaintiff.

26. In the months leading to the Plaintiff's termination (4th Q 2018 and 1st Q 2019), Petratos had assured Plaintiff that he would be paid his outstanding commissions due on the sales he made with the Rush University and Vidant Health Accounts.

27. Plaintiff was the salesman on the Rush account in 2017 for the original sale of a 3-year contract and was paid commission on same account per his Hiteks contract in 2017. Then in the 4th Q 2018, Hiteks received payment from Rush for the second year of the contract, and paid Plaintiff part of his second-year commission on the Rush account and Petratos told him the rest would be paid shortly. In December, the Plaintiff continued working for Hiteks based on the continues assurances that he would be paid his commissions. Petratos asked Wright for some more time at the end of the year to pay. Petratos also said he would be sending Wright a *New Hiteks Contract* for next year that his lawyer was drafting. He actually went through a number of new terms and conditions contained in the new Hiteks contract and asked the Plaintiff and Dave Thomas, the Director of Sales, to work on a new commission structure to be used for Hiteks new account Novartis, for their Pharmaceutical Representatives for reimbursement Leads forwarded to Hiteks. Wright was then given an additional partial commission payment in the first week of January 2019, along with additional money for his back expenses from 2018 that were also overdue. Wright was assured by Petratos that the rest of the Rush commission payment would be paid by the end of February 2019 and that he appreciated Wright's understanding of limited Hiteks finances. Petratos stated to Plaintiff that he had cash flow problems resulting from end of the year monies Hiteks owed for employee insurance, back taxes due, and other company expenses. Petratos repeated that the Plaintiff would be getting his new Hiteks contract to review shortly that it was still hung up with his attorney. Wright was also aware that knew substantial additional moneys were about to come into Hiteks from a customer (Vidant Health) and was assured he would be paid anything he was owed from these

11

funds. The remainder of this Rush commission, due to the Plaintiff was never paid. In the first week in March 2019, Hiteks also acknowledged payment in full was received by them from Vidant Health but nothing was paid to Plaintiff. Plaintiff then compiled an email containing a *Summary Statement of all Commissions* still owed, the Rush remainder and the new Vidant Health commissions and his back expenses. After the Plaintiff insisted on the payment of the all commission due from the Rush and Vidant, Hitek terminated Plaintiff.

## COUNT I

### (Breach of Contract)

Plaintiff repeats and realleges the allegations set forth in the previous Paragraphs of the Complaint.

28. On February 9, 2016, Plaintiff entered into a contract with Defendant Hiteks Solutions Inc. ("Hiteks").

29. The contract term was for 3 years with the right to expand for succession one (1) year provided upon mutual agreement of the parties.

30. Hiteks terminated Plaintiff's employment on February 22, 2019 without cause.

31. The parties February 9, 2016 agreement required Hiteks to pay the Plaintiff the compensation which is due and payable as the "Primary" Sales Representative (Dave Thomas as "Secondary" Sales Representative) per our Hiteks Contracts, on the date of termination or which may become due and payable after the time of such termination along with all unpaid expenses.

32. Plaintiff is owed commission totaling $48,418.30 and had demanded that Defendant pay that commission.

33. Defendant had agreed to pay the commissions that are due.

34. Defendant Hiteks is in breach of its agreement with Plaintiff Renaissance.

35. As a direct and proximate result of Hiteks Breach of Contract, Renaissance has suffered and will continue to suffer damages.

WHEREFORE; Plaintiff Renaissance seeks judgement against defendant for;

      a. Compensatory Damages in the amount of $48,408.30

      b. Interest

      c. Attorney fees

      d. Cost of suit

## COUNT II

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

Plaintiff repeats and realleges allegations set forth in Paragraphs 1-35 of Complaint.

36. Plaintiff Renaissance entered into a contractual relationship with Defendant Hiteks.

37. In every contractual relationship there is an implied Covenant of Good Faith and Fair Dealing

38. By and through its actions and inactions as set forth above individually Hiteks' failure to pay Renaissance in accordance with the terms of the contract and for the services rendered in the amount of $48,418.30

39. As a direct and proximate result of Hiteks Breach of its Covenant of Good Faith and Fair Dealing, Renaissance has suffered and will continue to suffer damages.

WHEREFORE; Plaintiff seeks judgement against Defendants for;

    a. Compensatory Damages in the amount of $48,418.30;

    b. Interest;

    c. Attorney fees; and

    d. Cost of suit

## COUNT III

### (New Jersey Conscientious Employee Protection Act)

40. Plaintiff repeats and realleges allegations set forth in Paragraphs 1-14 of Complaint

41. At all relevant times hereto Plaintiff Robert Wright and Renaissance were co-employees of Hiteks.

42. There was an economic dependence by Renaissance and Wright upon the working relationship with Hiteks and financial integration of Hiteks business with Renaissance and Wright.

43. Wright objected to the various false and fraudulent representations of Defendants to Epic and its platform users, pharmaceutical companies, the members of ACIDS who participated in Hiteks survey and members of the public who received healthcare from physicians, medical professionals and hospitals that utilized the Epic platform.

44. As a result of Wright's objection to the fraudulent and illegal conduct of the Defendants, the Defendants retaliated against Wright.

45. The retaliation included but not limited to the actions identified above and specifically Hiteks agreement with Renaissance which resulted in the termination and failure to pay Wright $48,418.30.

46. As a direct and proximate result of the retaliatory actions which violate the New Jersey Conscientious Employee Protection Act, Plaintiff has suffered and will continue to suffer damages.

WHEREFORE; Plaintiff demands judgement against defendants for damages individually

   a. Compensatory damages, including damages for emotional distress;

   b. Punitive damages;

   c. Lost wages including back wages and front wages;

   d. Attorney's fees, interest, and cost of suit;

   e. Pre and Post Judgment relief; and

   f. For such other relief that the court may deem proper

## COUNT IV

### (Violation of the Public Policy of the State of New Jersey)

Plaintiff repeats and realleges allegations set forth in Paragraphs 1-46 of Complaint.

47. The actions of the Defendant as set forth above violated the Public Policy of the State of New Jersey.

48. As a direct and proximate cause of the Defendant's actions and inactions in violation of the Public Policy of the State of New Jersey, Plaintiff has suffered and will continue to suffer damages.

WHEREFORE; Plaintiff demands judgement against defendants for damages jointly and severally;

   a. Compensatory damages, including damages for emotional distress;

   b. Punitive damages;

   c. Lost wages including back wages and front wages;

d. Attorney's fees, interest, and cost of suit;

e. Pre and Post Judgment relief; and

f. For such other relief that the court may deem proper

## COUNT V

### (Deceptive Practices)

The Plaintiff repeats and realleges allegations set forth in Paragraphs 1-48 of Complaint.

49. The false and fraudulent actions and representations of the Defendant individually and in their representative capacities, as stated above, including but not limited to the false and misleading statements made to Epic and it's Platform users, Pharmaceutical companies, the members of ACIDS who participated in Hiteks survey and the members of the public who received healthcare from doctors, medical professionals, and hospitals who use Epics platforms, were entirely to mislead those customers of Hiteks.

50. The deceptive practice of the Defendants would be misleading and in fact were misleading to the average customer and the general public.

51. The deceptive practice engaged in by Defendants and its representative agents and employees intended by Hiteks to be misleading to its average customers, and to the healthcare purchasing public at large.

52. The deceptive practice and false statements of Hiteks were likely to influence the choice of the consumers purchasing their product.

53. The deceptive practice and false statements made by Hiteks and its agents were related to facts and defemination likely to influence a customer's choice and imported upon information that these customers valued and likely to affect consumption choices.

54. As a direct and proximate cause of Defendants actions of deceptive trade practices which violated Federal and State Law, the Plaintiff has suffered damages and will continue to suffer damages.

WHEREFORE; Plaintiff demands judgement against Defendants, jointly and severally, as follows

    a. Enjoying the defendants from engaging in Deceptive Trade Practices in the Future.

    b. Awarding Plaintiff all compensatory, exemplary, punitive, and other damages deemed by federal and State Law

    c. Attorney fees;

    d. Pre and post judgment relief;

    e. Cost of suit; and

    f. For such relief that the court may deem proper

## COUNT VI

### (Unjust Enrichment)

The Plaintiff repeats and realleges allegations set forth in Paragraphs 1-54 of Complaint.

55. Plaintiff provided valued services to Defendants.

56. Defendant agreed to pay Plaintiff for these services.

57. The services provided by Plaintiff to Defendants were of value to the Defendant and were the type of services that in general business proved and are compensated for.

17

58. By not compensating the Defendants for their time and services and by not paying the commission that defendant previously told Plaintiff that they would pay to the them, Defendants have been unjustly enriched in the amount of $48,418.30.

WHEREFORE; Plaintiff demands Judgment against Defendant jointly and severally as follows

    a. For $48,418.30;

    b. Compensatory and Punitive Damages;

    c. Attorney fees;

    d. Interest;

    e. Pre and Post Judgment relief;

    f. Costs of suit; and

    g. For such other relief the court may deem proper

[CERTIFICATION PURSUANT TO R. 4:5-1]

The undersigned, attorney for the plaintiff, hereby certifies as follows:

1. The above-captioned action is not the subject or any action pending in any Court or a pending arbitration proceeding.

2. No other action or arbitration proceeding is contemplated.

3. There are no other parties known to me who should be joined in this action.

4. The statements contained herein are true to the best of my knowledge, information and belief. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

## JURY DEMAND

The plaintiff, Robert Wright, hereby demands trial by jury as to all issues in the above matter.

## DESIGNATION OF TRIAL ATTORNEY

In accordance with R. 4:25-4, William J. Courtney is hereby designated as trial counsel for the plaintiff, Robert Wright, in the above matter.

LAW OFFICES OF WILLIAM J. COURTNEY, LLC

Date: December 5, 2019          By:     */s/William J. Courtney*

William J. Courtney

Attorney for Plaintiff